1   ROBERT H. ROTSTEIN (72452)
    rxr@msk.com
2   PATRICIA H. BENSON (60565)
    phb@msk.com
3   JEAN PIERRE NOGUES (84445)
    jpn@msk.com
4   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
5   Los Angeles, CA 90064-1683
    Telephone: (310) 312-2000
6   Facsimile: (310) 312-3100

7   Attorneys for Plaintiffs
    CBS Broadcasting Inc., CBS Studios Inc., and
8   Survivor Productions, LLC

9

10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CBS BROADCASTING INC., CBS STUDIOS INC., SURVIVOR PRODUCTIONS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DISH NETWORK CORPORATION; DISH NETWORK L.L.C., <br><br> Defendants. | CASE NO. CV12-4551 DMG (SHx) <br><br> Hon. Dolly M. Gee <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS DISH NETWORK CORPORATION AND DISH NETWORK L.L.C.'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(3) OR, IN THE ALTERNATIVE, TRANSFER PURSUANT TO 28 U.S.C. § 1406(A)** <br><br> DATE:    August 24, 2012 <br> TIME:    9:30 a.m. <br> DEPT:    Courtroom No. 7 <br><br><br> **PUBLIC  VERSION** |

# **TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS AND SUMMARY OF ARGUMENT ...............1

III.    STANDARD FOR MOTIONS BASED ON A FORUM SELECTION
        CLAUSE...............................................................................................4

IV.     DISH IS JUDICIALLY ESTOPPED FROM MAKING THIS MOTION .....5
        A.    *DISH Consistently Argued Before Judge Swain That The New
              York Court Had The Right To Decide The Proper Venue For The
              Claims Asserted In California*...............................................................5
        B.    *The Doctrine of Judicial Estoppel Mandates That DISH's Motion
              Be Denied* ........................................................................................7

V.      JUDGE SWAIN AGREED WITH DISH THAT THE LAW
        REQUIRED HER TO DECIDE THE VENUE ISSUE, BUT REJECTED
        THE SAME ARGUMENTS DISH MAKES HERE ...................................10

VI.     IN ANY EVENT, BECAUSE THE PLAINTIFFS' CLAIMS DO NOT
        ARISE UNDER OR OUT OF THE RETRANSMISSION
        AGREEMENT, DISH'S MOTION SHOULD BE DENIED ......................13
        A.    *The Retransmission Agreement Does Not Implicate The Exclusive
              Rights Under Copyright At Issue Here* ...............................................14
        B.    *The Provisions Of The Retransmission Agreement That DISH
              Cites Do Not Support Its Argument That Plaintiffs' Claims Arise
              Under Or Out Of That Agreement* ......................................................15
        C.    *DISH's Contracts With Other Parties Are Irrelevant To Plaintiffs'
              Claims*................................................................................................17
        D.    *17 U.S.C. § 122 Does Not Bring Plaintiffs' Claim "Under" The
              Retransmission Agreement*.................................................................18
        E.    *The Cases Upon Which DISH Relies Do Not Support Its Position
              That This Case Arises Out Of Or Under The Retransmission
              Agreement*..........................................................................................19

VII.    CONCLUSION .......................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES

*Accentra, Inc. v. Staples, Inc.*,
    No. CV 07-5862 ABC, 2008 U.S. Dist LEXIS 112183 ...............................13, 14

*Androutsakos v. M/V Psara*,
    No. 02-1173-KI, 2004 U.S. Dist. LEXIS 12612 (D. Or. Jan. 22, 2004)............14

*Armco Inc. v. North Atlantic Ins. Co., Ltd.*,
    68 F. Supp. 2d 330 (S.D.N.Y. 1999) ...................................................................4

*Bagdasarian Productions, LLC v. Twentieth Century Fox Film Corp.*,
    No. 2:10-cv-02991-JHN-JCGx, 2010 WL 5154136 (C.D. Cal. Aug. 12,
    2010) ...................................................................................................................20

*Baughman v. Walt Disney World Co.*,
    ___ F.3d ___, No. 10-55792, 2012 WL 2914249 (9th Cir. July 18, 2012)....7, 10

*Big Sandy Rancheria of W. Mono Indians v. Brownstone, LLC*,
    No. 1:11-cv-00198-OWW-GSA, 2011 U.S. Dist. LEXIS 43823 (E.D.
    Cal. Apr. 22, 2011) ............................................................................................20

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
    No. C 04-04825 JW, 2005 U.S. Dist. LEXIS 8450.............................................20

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*,
    749 F.3d 154 (3rd Cir. 1984) .............................................................................15

*Darby v. Dep't of Energy*,
    231 F. Supp. 2d 274 (D.D.C. 2002).....................................................................4

*E. & J. Gallo Winery v. Andina Licores S.A.*,
    446 F.3d 984 (9th Cir. 2006) .............................................................................13

*Graham Tech Solutions, Inc. v. Thinking Pictures, Inc.*,
    949 F. Supp. 1427 (N.D. Cal. 1997)...................................................................19

*Horn & Hardart Co. v. Burger King Corp.*,
    476 F. Supp. 1058 (S.D.N.Y. 1979) ....................................................................6

ii

*Indymac Mortgage Holdings, Inc. v. Reyad,*
    167 F. Supp. 2d 222 (D. Conn. 2001)..................................................4

*Ingenieria Alimentaria del Matatipac, S.A. de C.V v. Ocean Garden
    Products Inc.,*
    320 Fed. Appx. 548 (9th Cir. 2009) ...............................................13

*Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty,*
    408 F.3d 1250 (9th Cir. 2005) .........................................................4

*Loukianoff v. Galitsky,*
    No. C 12-00296 CRB, 2012 U.S. Dist. LEXIS 47974 .....................20

*Lumascape USA, Inc. v. Vertex Lighting, Inc.,*
    No. C 05-04809 WHA, 2006 WL 825411 .......................................20

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*
    858 F.2d 509 (9th Cir. 1988) ....................................................9, 19

*Manila Indus., Inc. v. Ondova Ltd.,*
    334 Fed. Appx. 821 (9th Cir. 2009) ...............................................20

*Margolis v. Ryan,*
    140 F.3d 850 (9th Cir. 1998) .........................................................12

*Modius, Inc. v. Psinaptic, Inc.,*
    No. C 06-02074 SI, 2006 WL 1156390 (N.D. Cal. May 2, 2006)......4

*Multimin USA Inc. v. Walco Intern'l, Inc.,*
    No. CV F 06-0226 AWI SMS, 2006 WL 1046964 (E.D. Cal. Apr. 11,
    2006) ...........................................................................................19

*Murphy v. Schneider Nat'l, Inc.,*
    362 F.3d 1133 (9th Cir. 2003), *as amended* (Mar. 22, 2004).........4, 13

*Nagel v. ADM Investor Servs.,*
    995 F. Supp. 837 (N.D. Ill. 1998)....................................................4

*New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG,*
    121 F.3d 24 (2d Cir. 1997) ..............................................................4

*Nilon v. Natural-Immunogenics Corp.,*
    No. 12-CV-00930-BGS, 2012 WL 2871658 (S.D. Cal. July 12, 2012) ..............4

iii

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007) ...............................................................................10

*Questrel Inc. v. Merriam-Webster, Inc.*,
    No. SACV 10-1907 AG-MLG, 2011 U.S. Dist. LEXIS 154753 (C.D.
    Cal. Mar. 23. 2011) ...........................................................................................19

*Samson v. NAMA Holdings*, LLC,
    637 F.3d 915 (9th Cir. 2011) ................................................................................7

*Sims v. Paramount Gold & Silver Corp.*,
    No. CV 10-356-PHX-MHM, 2010 U.S. Dist LEXIS 135661 (D. Az. Dec.
    21, 2010) ............................................................................................................14

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*,
    925 F.2d 566 (2d Cir. 1991) ..............................................................................12

**STATUTES**

17 U.S.C.
    § 106(1) and (3) .............................................................................................2, 15
    § 106(4) ...............................................................................................................15
    § 122 .......................................................................................................14, 18, 19
    § 504(c) ................................................................................................................18

28 U.S.C.
    § 1292(a) .............................................................................................................13
    § 1406(a) ...............................................................................................................4

47 U.S.C.
    § 325 ..............................................................................................................14, 19
    § 325 (b) ..............................................................................................................14

**OTHER AUTHORITIES**

2 *Nimmer On Copyright*
    §8.18[G][2] ...........................................................................................................18

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and*
    *Procedure*
    § 1352 (Supp. 2003) .............................................................................................4

Fed. R. App. Proc.,
    Rule 4(a) ..............................................................................................................13

Mitchell
Silberberg &
Knupp LLP

4767828.1

iv

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Federal Rules of Civil Procedure

Rule 12(b)(3)............................................................................4, 13
Rule 42............................................................................................9

Mitchell
Silberberg &
Knupp LLP

4767828.1

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I.     INTRODUCTION

By their motion to dismiss or transfer, Defendants DISH Network LLC and DISH Network Corporation (collectively, "DISH") persist in a brazen attempt to forum shop, which began with an ill-fated anticipatory declaratory judgment action in the Southern District of New York.  Because DISH strenuously argued in the declaratory judgment action that the New York judge should decide venue, and the New York judge did so (and ruled against DISH), DISH is judicially estopped from bringing this motion.  And, even if the Court were to reach the merits, DISH's motion should be denied.  As discussed below, the Plaintiffs in this lawsuit are not parties to the contract containing the forum selection clause that DISH invokes, and DISH's acts of copyright infringement do not arise under or out of the contract.

## II.     STATEMENT OF FACTS AND SUMMARY OF ARGUMENT

DISH markets a system called "the Hopper," through which it offers an unauthorized premium service called "PrimeTime Anytime" ("PTAT"), which unlawfully reproduces and distributes to DISH customers the primetime television programming of all four major television networks on a continuous, rolling basis.  Cmplt., ¶ 21.  Through another feature called "AutoHop," DISH's customers can then view that primetime programming with all of the individual commercials automatically skipped.  *Id.*

On May 24, 2012, Plaintiffs CBS Broadcasting Inc., CBS Studios Inc. and Survivor Productions, LLC, copyright holders in a large number of prime time television programs, filed this copyright infringement action against DISH.[1]  The

---

[1] This case is one of three, now-related copyright infringement actions that various copyright owners filed against DISH on May 24, 2012 in this District, alleging direct and secondary infringement of representative copyrighted works in connection with the Hopper, the PTAT, and the AutoHop services.  The other two cases are *Fox Broadcasting Company, Inc.,et al. v. DISH Network L.L.C. et al.,* Case No. 12-CV-04529 DMG (SHx) (the "Fox Case") and *NBC Studios, L.L.C., et al. v. DISH Network Corporation et al.*, Case No. 12-CV-04536 DMG(SHx) (the

Mitchell
Silberberg &
Knupp LLP

1  complaint alleges that DISH is engaging in direct and secondary infringement by

2  virtue of PTAT and AutoHop, in violation of 17 U.S.C. § 106(1) and (3), which

3  respectively grant the copyright holder the exclusive rights to reproduce and

4  distribute the copyrighted works.  Cmplt. ¶¶ 27-54.

5       A scant two hours and 23 minutes before the Plaintiffs filed this action,

6  DISH – in a transparent effort to preempt the copyright owners' choice of forum –

7  rushed into the United States District Court for the Southern District of New York

8  and filed a skeletal, putative declaratory relief action (the "New York Action")

9  against, among other defendants, CBS Corporation, which is the ultimate parent of

10  two of the Plaintiffs.[2]  CBS Corporation does not hold the registered copyrights in

11  any primetime television programming and hence is not a plaintiff in this copyright

12  infringement action.  DISH's bare bones complaint in the New York Action did

13  not name any of the Plaintiffs as a defendant, and asked the New York court to

14  declare that it had not infringed unidentified copyrights and that it had not

15  breached unidentified contracts.

16       Significantly, DISH consistently argued that the New York court was the

17  proper forum in which to determine venue.  United States District Judge Laura

18  Taylor Swain agreed, and then denied DISH's motion for an anti-suit injunction,

19  making it clear that this copyright infringement case could and should proceed in

20  the Central District of California, not in the Southern District of New York.  Judge

21  Swain then dismissed DISH's declaratory judgment copyright infringement claim

22  against CBS Corporation as an improper anticipatory filing.

23  _____

"NBCU Case").  (The instant case, the Fox Case and the NBCU Case are
24  sometimes referred to collectively as the "California Actions")
[2] In one of its many misleading and irrelevant arguments, DISH contends that the
25  Plaintiffs failed to identify CBS Corporation as "having a direct ownership interest
of greater than 50% of Survivor Productions."  Motion at 5, n. 2.  In fact, a non-
26  public entity called CBS Survivor Productions Inc. owns 50%, and CBS
Corporation is the ultimate parent of that entity.  Importantly, far from hiding that
27  fact, CBS Corporation actually brought it to the New York court's attention in
connection with briefing on the venue issue.  *See* Declaration of Lura Burton, ¶ 1
28  (attached as Exhibit A to Request for Judicial Notice).

Mitchell
Silberberg &
Knupp LLP

4767828.1

2

1    By this motion to dismiss or transfer, DISH is essentially asking this Court
2  to overrule Judge Swain's decision. If DISH disagreed with Judge Swain's ruling,
3  it could have appealed her decision to the Second Circuit Court of Appeals. DISH
4  chose not to do so. Instead, DISH makes the identical arguments that it made
5  before Judge Swain and asks this Court to order the Plaintiffs to do precisely what
6  Judge Swain said they did not have to do – litigate their copyright claims in New
7  York. DISH's attempt to evade Judge Swain's ruling is particularly egregious
8  because DISH repeatedly argued that Judge Swain, and not any judge in the
9  Central District of California, had the exclusive right to decide the proper venue
10  for the Plaintiffs' copyright infringement claims. Because DISH is judicially
11  estopped from asking this Court to revisit the venue issue and from claiming that
12  venue is improper in the Central District, its motion should be denied.

13    Even if the Court were to consider the merits, DISH's motion should be
14  denied. None of the Plaintiffs in this action are signatories to the agreement
15  between DISH and non-party CBS Corporation (the "Retransmission Agreement")
16  that contains the forum selection clause on which DISH relies, and the substantive
17  copyright claims at issue in this case do not relate to the Retransmission
18  Agreement. ██████████████████████████████████████
19  ████████████████████████████████████████████
20  ██████████████████████████████████ the copyright infringement claims at
21  issue in this case focus on DISH's unauthorized *reproduction* and *distribution* of
22  Plaintiffs' primetime television programming through DISH's PTAT service,
23  which can then be viewed with the commercials automatically skipped with
24  AutoHop. ██████████████████████████████████████████
25  ████████████████████████

26    For all these reasons (any one of which is sufficient), DISH's motion should
27  be denied.

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## III.   STANDARD FOR MOTIONS BASED ON A FORUM SELECTION CLAUSE

DISH's recitation of the standards that govern its motion conveniently omits the Ninth Circuit rule that "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003), *as amended* (Mar. 22, 2004).[3]   "This conclusion is in accord with virtually unanimous authority of the few courts that have faced this issue and with a leading federal procedural treatise that has addressed the issue.  *Id., citing New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997); *Darby v. Dep't of Energy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002); *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237, 244 (D. Conn. 2001); *Armco Inc. v. North Atlantic Ins. Co., Ltd.*, 68 F. Supp. 2d 330, 337-38 (S.D.N.Y. 1999); *Nagel v. ADM Investor Servs.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352 (Supp. 2003).  *See also Modius, Inc. v. Psinaptic, Inc.*, No. C 06-02074 SI, 2006 WL 1156390 at *5 (N.D. Cal. May 2, 2006) ("Because a 12(b)(3) motion has a dramatic effect on plaintiff's forum choices, the trial court must 'draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party'") (citing *Murphy*).

---

[3] "A motion to enforce a forum selection clause is treated as a motion pursuant to Federal Rule of Civil Procedure 12(b)(3)." *Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005).  Thus, the fact that defendants have made an alternative motion to enforce the forum selection clause by transferring the action pursuant to 28 U.S.C. § 1406(a) does not alter the standard that must be applied.  *See Nilon v. Natural-Immunogenics Corp.*, No. 12-CV-00930-BGS, 2012 WL 2871658, *1 (S.D. Cal. July 12, 2012) ("A defendant may raise the defense of improper venue by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3).  If the Court determines venue is improper, it may dismiss the case, or if it is in the interest of justice, the Court may transfer the case to any other district in which it could have been brought. 28 U.S.C. § 1406(a).")

Mitchell
Silberberg &
Knupp LLP

4767828.1

4

## IV. DISH IS JUDICIALLY ESTOPPED FROM MAKING THIS MOTION

From the outset, DISH has tried to deprive the Plaintiffs of the forum they chose for their copyright infringement claims – the Central District of California – and to force them to litigate those claims in New York. DISH insisted that only Judge Swain had the right to determine the venue for the parties' copyright infringement dispute. Unhappy that Judge Swain ruled against them on the venue issue and ordered that Plaintiffs' copyright claims be litigated in California, DISH is now before this Court seeking a second bite at the apple. DISH's unabashed forum shopping should be halted now.

### A. DISH Consistently Argued Before Judge Swain That The New York Court Had The Right To Decide The Proper Venue For The Claims Asserted In California

DISH's truncated recitation of the "Procedural Background" that undergirds this Motion (Motion at 6-9) fails to mention DISH's adamant insistence that Judge Swain in New York had the exclusive right to decide the proper venue for the claims that had been asserted in the California Actions. Indeed, in his very first letter, sent the day after all of the lawsuits had been filed, DISH's lead attorney wrote to all counsel in the California Actions:

> If you will not agree to the dismissal, transfer or stay, we ask that, in the interest of orderly proceedings, you will at the very least agree to hold the actions in California in abeyance pending submission of the issues to Judge Swain for resolution. *As the judge assigned to the first-filed case, this venue decision is reserved to Judge Swain.*

Declaration of Robert H. Rotstein ("Rotstein Decl."), Ex. A (legal citations omitted, emphasis added).

In furtherance of this position, DISH took aggressive steps to bring the California litigation to a screeching halt until Judge Swain ruled on the venue issue. First, on May 30, 2012, DISH raced to Judge Swain on an *ex parte* basis,

5

Mitchell
Silberberg &
Knupp LLP

4767828.1

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  where it sought and obtained an Order to Show Cause for a motion by DISH

2  seeking an "anti-suit injunction" that would enjoin prosecution of the California

3  Actions.  Declaration of Melanie D. Phillips filed by DISH ("Phillips Decl."),

4  Ex. F.  At that same hearing, DISH also sought and obtained a temporary

5  restraining order against Fox, which had refused to withdraw an *ex parte*

6  application for expedited discovery it had filed in the Fox Case.  That TRO barred

7  Fox from "prosecuting in any manner" its California Action pending the hearing

8  and determination in New York of DISH's anti-suit injunction.  *Id.*[4]

9        In DISH's Memorandum of Law in support of its application for an anti-suit

10 injunction barring the Plaintiffs from prosecuting their copyright infringement

11 claims in California, DISH argued that where two lawsuits are filed raising the

12 same claims, the court in which the first-filed case was brought decides venue no

13 matter how brief the interval between filings.  Among other authorities, it cited

14 *Horn & Hardart Co. v. Burger King Corp.*, 476 F. Supp. 1058, 1060 (S.D.N.Y.

15 1979), for the proposition that "we do not see how the brevity of interlude can

16 effect the danger of inconsistent results and duplication of judicial effort.  One

17 court or the other must decide which case is to proceed, and controlling authorities

18 place the burden upon us [the court in the first-filed case.]"  Rotstein Decl., Ex. B

19 at 15.  DISH argued forcefully, and successfully, to Judge Swain that because its

20

21

_____

22 [4] Although DISH had not sought a TRO against prosecution of the CBS or NBCU
   cases, Judge Swain asked counsel for the Plaintiffs (whose firm also is counsel for
23 the plaintiffs in the NBCU Case), if the Plaintiffs would "undertake to operate in a
   manner informed by my ruling on the TRO request against Fox."  5/30/12 Tr. at
24 30:13-18 (Rotstein Decl., Ex.C).  Based on this inquiry, DISH subsequently sent a
   letter demanding that the Plaintiffs (and the plaintiffs in the NBCU Case) sign
25 stipulations in their respective California actions, extending DISH's time to
   respond to the California complaints until after Judge Swain had ruled on DISH's
26 motion for an anti-suit injunction (*see* Dckt. # 10).  That letter impliedly threatened
   that DISH would ask Judge Swain for a TRO against the CBS and NBCU plaintiffs
27 if they prosecuted the California cases "*in any manner whatsoever*" before Judge
   Swain ruled on the venue issue.  (6/11/2012 letter from W. Molinksi, (Rotstein
28 Decl. Ex. E) (emphasis in original)).

Mitchell
Silberberg &
Knupp LLP

4767828.1

6

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   declaratory relief action was filed first, the New York court had the exclusive right

2   to determine venue for the claims that had been asserted in California.

3       **B.**    *The Doctrine of Judicial Estoppel Mandates That DISH's Motion*

4                  *Be Denied*

5         DISH is judicially estopped from asking this Court to revisit the venue issue

6   that DISH argued in New York was exclusively for Judge Swain to decide, and

7   that Judge Swain has decided.  As the Ninth Circuit recently held in *Baughman v.*

8   *Walt Disney World Co.*, ___ F.3d ___, No. 10-55792, 2012 WL 2914249 (9th Cir.

9   July 18, 2012), "[W]here a party assumes a certain position in a legal proceeding,

10   and succeeds in maintaining that position, he may not thereafter, simply because

11   his interests have changed, assume a contrary position . . . .  This doctrine is known

12   as judicial estoppel and its purpose is to protect the integrity of the judicial process

13   by 'prohibiting parties from deliberately changing positions according to the

14   exigencies of the moment.'"  *Id.* at *1 (internal quotation marks and citations

15   omitted).  The doctrine applies to positions taken "in the same action or in different

16   actions."  *Samson v. NAMA Holdings,* LLC, 637 F.3d 915, 935 (9th Cir. 2011).  It

17   does not require that those positions be taken under oath.  *Baughman,* at **1-2.

18   Nor does it require the inconsistent positions to be about factual matters.  *Id.* at *2

19   (noting that courts have "applied the doctrine to prevent a party from making a

20   legal assertion that contradicted its earlier legal assertion.").

21         Judicial estoppel is imposed at the discretion of the district court.  *Id.* at *1:

22   As the court in *Baughman* noted:

23         In considering whether the district court abused its discretion, we look at

24         several factors, including:  (1) Is the party's later position 'clearly

25         inconsistent with its earlier position?' (2) Did the party succeed in

26         persuading a court to accept its earlier position, creating a perception that the

27         first or second court was misled? and (3) Will the party seeking to assert an

28

Mitchell
Silberberg &
Knupp LLP

4767828.1

7

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    inconsistent position derive an unfair advantage or impose an unfair

2    detriment on the opposing party?

3  *Id.* (internal citations omitted)  All three of these factors are present here.  First,

4  DISH's repeated assertion that the New York court had the exclusive right to

5  decide the venue issue is flatly inconsistent with this Motion, which raises the

6  identical arguments it made in New York.  Second, DISH persuaded Judge Swain

7  to accept its argument that she had the exclusive right to decide the venue issue.

8  *See* 7/2/12 Tr. at 6:19-24 (Rotstein Decl., Ex. G) ("it would be for this Court to

9  decide where ultimately the litigation should proceed.").  Finally, allowing DISH

10  to relitigate the venue issue in another court will give it the unfair advantage of

11  evading the venue ruling it sought and obtained in New York.

12    Contrary to DISH's contention (Motion at 9), and as more fully discussed in

13  Section V, *infra*, Judge Swain did not leave it open for DISH to revisit the venue

14  issue in this or any other court (Motion at 9), nor would there have been any reason

15  for her to do so.  There were two sets of competing lawsuits raising the question of

16  DISH's copyright infringement: the California Actions and DISH's New York

17  declaratory relief action.  DISH expressly argued that "one court or the other must

18  decide which case is to proceed" and that the law required Judge Swain to make

19  that decision.  Rotstein Decl., Ex. B at 15.  Judge Swain agreed.  7/22/12 Tr.

20  at 6:19-24 (Rotstein Decl., Ex. G) ("[S]ince this was the venue of the first filed

21  action *it would be for this Court to decide where ultimately the litigation should*

22  *proceed.*"(emphasis added)).  It would have made absolutely no sense for Judge

23  Swain to rule on the venue issue for these competing lawsuits, and then have a

24  California court rule on precisely the same issue, with potentially inconsistent

25  results.

26    Further, Judge Swain did not simply "decline[] to exercise [her] discretion to

27  hear DISH's declaratory judgment claims," as DISH disingenuously asserts.

28

Mitchell
Silberberg &
Knupp LLP

4767828.1

8

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   Motion at 9.  She also denied DISH's request to enjoin the California Actions,

2   thereby determining the venue in which "the [copyright infringement] litigation

3   should proceed."  *See* 7/2/2012 Tr. (Rotstein Decl., Ex. G) at 6:19-24.[5]  DISH is

4   estopped from challenging that determination in this Court.

5        DISH also is estopped from arguing that the Ninth Circuit's decision in

6   *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir. 1988), is

7   "binding" on the issue of whether the forum selection clause in the Retransmission

8   Agreement requires Plaintiffs' copyright infringement claims to be litigated in

9   New York.  DISH insisted that it had the absolute right, as the "first filer," to have

10  the New York court make that decision.  Second Circuit law applied in that forum.

11  DISH thus cited Second Circuit authority in arguing to Judge Swain that "the CBS

12  contract is broad enough to encompass the copyright claims that the CBS affiliates

13  brought in California."  DISH Memorandum In Support Motion For An Anti-Suit

14  Injunction (Rotstein Decl., Ex. B) at 18.  But as CBS pointed out in its extensive

15  briefing on the subject:

16

17

---

18  [5] Equally untenable is DISH's position that language from Judge Swain's order
    about "mitigating inefficiencies" through coordination or consolidation means that
19  DISH can ask this Court to reconsider the venue issue that Judge Swain has
    already decided. (*See* Motion at 9.) Judge Swain simply noted that if the parties
20  were unable to agree to consolidate the remaining claims in New York with those
    in California – and the parties have been unable to do so – the courts could, "*with*
21  *the cooperation of the parties, coordinate* the proceedings so as to minimize
    inefficiencies." Id. Coordination of proceedings is different from consolidation.
22  Consolidation refers to joining actions that a pending before a single court (Fed. R.
    Civ. P. 42) (referring to actions before "the" court), while coordination involves
23  coordinating pretrial proceedings (typically, discovery) where actions are pending
    in two different districts. *See, e.g.*, Federal Judicial Center, Manual for Complex
24  Litigation, § 20.14 (4th Ed. 2004) ("Even when related cases pending in different
    districts cannot be transferred to a single district, judges can coordinate
25  proceedings in their respective courts to avoid or minimize duplicative activity and
    conflicts. Coordination requires effective communication between judges and
26  among judges and counsel.") *See* Phillips Decl., Ex. G. Moreover, Judge Swain's
    order expressly contemplates consolidation and coordination only upon agreement
27  of the parties. It does not contemplate a coercive motion by DISH to force the
    Plaintiffs to litigate their copyright claims in New York over their objection.

28

Mitchell
Silberberg &
Knupp LLP

4767828.1

9

1   Under Second Circuit law, this forum selection clause — which is expressly
2   limited to disputes that 'arise under or out of' the agreement — must be
3   construed narrowly. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d
4   Cir. 2007) ("We do not understand the words 'arise out of' as encompassing
5   all claims that have some possible relationship with the contract, including
6   claims that may only 'relate to,' be 'associated with,' or 'arise in connection
7   with' the contract.").

8   Memorandum of Law of CBS Corporation and NBCUniversal Media LLC (1) In
9   Support of Motion to Dismiss, Stay or Transfer; and (2) In Opposition to DISH's
10  Motion For An Anti-Suit Injunction (Rotstein Decl., Ex. D) at 12-13. Judge Swain
11  necessarily agreed with CBS's position. Having lost the argument under Second
12  Circuit law, DISH cannot now come to this Court and demand that the question be
13  reconsidered under the Ninth Circuit's interpretation of federal law. *Baughman*,
14  *supra*. DISH's motion should be denied.

15  **V.    JUDGE SWAIN AGREED WITH DISH THAT THE LAW**
        **REQUIRED HER TO DECIDE THE VENUE ISSUE, BUT**
16      **REJECTED THE SAME ARGUMENTS DISH MAKES HERE**

17

18      On July 2, 2012, Judge Swain heard oral argument on DISH's Motion for an
19  Anti-Suit Injunction, and on cross motions filed by CBS Corporation, NBCU and
20  Fox to dismiss transfer or stay DISH's New York Action. As it does here (*see*
21  DISH Motion at 8:1-6), DISH asserted that a statement that Judge Swain made at
22  the May 30 *ex parte* hearing indicated that the litigation belonged in New York.
23  *See* 7/2/2012 Tr. (Rotstein Decl., Ex. G) at 6:13-16 ("MR. BICKS: There is
24  nothing ... that should cause this Court to deviate from its initial assessment on
25  May 30 that this controversy belongs in New York."). Judge Swain was quick to
26  correct DISH's mischaracterization of her words:

27

28

Mitchell
Silberberg &
Knupp LLP

4767828.1

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   For clarity, I think I said on the 30th and I think the thrust of what I intended

2   to say was that since this was the venue of the first filed action *it would be*

3   *for this Court to decide where ultimately the litigation should proceed*.  But

4   I don't think I intended to preview the ultimate decision on that venue

5   question.

6   *Id.* at 6:19-24 (emphasis added).

7       In the New York action, DISH made the identical arguments to Judge Swain

8   that it now advances before this Court – *i.e.*, that there is a mandatory forum

9   selection clause in its contract with CBS Corporation (Motion at 1, 3, 11-13) that

10  supposedly binds the non-signatory Plaintiffs (Motion at 2, 17-19) and covers the

11  Plaintiffs' copyright infringement claims (Motion at 2, 14-17).  DISH further

12  argued to Judge Swain that she should enjoin this California action and require the

13  Plaintiffs to bring their copyright infringement claims in New York.  Significantly,

14  DISH specifically argued, as it does here, that the "Southern District of New York

15  is also one of two mandatory fora in DISH's contract with CBS" and that "the

16  forum selection clause in the CBS contract is broad enough to encompass the

17  copyright claims that CBS affiliates brought in California. . . . It is also well

18  established that non-parties to an agreement are subject to the forum selection

19  clause."  Rotstein Decl., Ex. B at 4, 18.[6]

20      On July 9, 2012, after considering extensive briefing and hearing lengthy

21  oral argument, Judge Swain issued a 13-page decision denying DISH's request that

22  the Plaintiffs be enjoined from litigating their copyright infringement claims in

23  California, and dismissing DISH's copyright infringement declaratory relief

24

25  [6] Along the same lines, DISH argued that "causes of action that will 'necessarily
    require analysis of the parties' rights and duties under the agreements' are within
26  the scope of those agreements' forum selection clauses. . . .CBS's [copyright
    infringement] claims . . . will implicate rights under the re-transmission agreement
27  between CBS and DISH" (Rotstein Decl., Ex. B at 19); and "[w]ith respect to
    CBS, [DISH] bargained for New York as an appropriate forum in its
28  retransmission contract with DISH" (Rotstein Decl., Ex. F at 3).

Mitchell
Silberberg &
Knupp LLP

4767828.1

11

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  claims.  *See* Phillips Decl., Ex. G.  Contrary to DISH's argument, Judge Swain did

2  *not* leave an opening for DISH to reargue the venue issue in California.  Judge

3  Swain Order's stated, among other things:

4      [E]ntertaining the declaratory judgment complaint for the purpose of

5      consolidating all of the litigation against the four networks in New York

6      would be particularly inappropriate in this case, precisely because ***three of***

7      ***the sets of parties claiming injury have chosen another forum for their***

8      ***claims, and none of those natural plaintiffs has asserted an affirmative***

9      ***claim under a contract requiring litigation in New York*** .... In light of ... the

10      existence of coercive litigation as to most of the issues in California, ***the***

11      ***Court finds that there is no useful or appropriate purpose in entertaining***

12      ***DISH's declaratory judgment action to the extent it overlaps with the***

13      ***litigation pending in the Central District of California*** .... For the foregoing

14      reasons, ***DISH's request for an anti-suit injunction is denied.***

15  Order at 12-13 (Phillips Decl., Ex. G at 146-147) (emphasis added).

16      A court order is deemed to include all findings necessary to its conclusion.

17  *See, e.g., Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (court's granting of

18  summary judgment motion "necessarily implies that the district court rejected

19  appellants' motion for a continuance."); *Trans-Orient Marine Corp. v. Star*

20  *Trading & Marine, Inc.*, 925 F.2d 566 (2d Cir. 1991) ("this holding [the defendant

21  was an intended beneficiary] is necessarily implied in the district court's opinion

22  since, after posing the question, the district court found a promise of forbearance

23  that could be enforced as a defense by the [defendant].").  In order to conclude that

24  an anti-injunction order was unwarranted, and that there was "no useful or

25  appropriate purpose" in entertaining DISH's copyright infringement declaratory

26  relief claim in New York because the Plaintiffs had chosen the Central District of

27  California as their venue, Judge Swain necessarily ruled that the forum selection

28

Mitchell
Silberberg &
Knupp LLP

4767828.1

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   clause in DISH's contract with CBS Corporation did not require those copyright

2   claims to be litigated in New York. *See also Murphy, supra*, 362 F.3d at 1138 ("In

3   the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial

4   court must draw all reasonable inferences in favor of the non-moving party and

5   resolve all factual conflicts in favor of the non-moving party.").

6        DISH could have appealed Judge Swain's Order denying its motion for an

7   anti-suit injunction. *See* 28 U.S.C. 1292(a) ("the courts of appeals shall have

8   jurisdiction of appeals from . . . (1) Interlocutory orders of the district courts of the

9   United States . . . or of the judges thereof..., refusing... injunctions); *E. & J. Gallo*

10   *Winery v. Andina Licores S.A.*, 446 F.3d 984, 987 (9th Cir. 2006) (appeal from

11   denial of anti-suit injunction). DISH chose not to do so, and the time to appeal has

12   expired. Fed. R. App. Proc., Rule 4(a). DISH cannot now ask this Court to

13   reconsider arguments Judge Swain considered and rejected.

14   **VI.**   **IN ANY EVENT, BECAUSE THE PLAINTIFFS' CLAIMS DO NOT ARISE UNDER OR OUT OF THE RETRANSMISSION**

15   **AGREEMENT, DISH'S MOTION SHOULD BE DENIED**

16        Even if it were appropriate for the Court to consider DISH's motion on the

17   merits (and it is not), DISH could not prevail. Quite simply, the Plaintiffs'

18   copyright infringement claims do not arise under or out of the Retransmission

19   Agreement. Thus, the forum selection clause does not apply. None of DISH's

20   virtually unintelligible arguments compels a different conclusion.

21        A copyright infringement claim will not be subject to a contractual forum

22   selection clause where resolution of that claim does not require interpretation of, or

23   otherwise relate to, the contract. *See Accentra, Inc. v. Staples, Inc.*, No. CV 07-

24   5862 ABC (RZx), 2008 U.S. Dist LEXIS 112183, at **7-14 (C.D. Cal. Feb. 27,

25   2008) (patent, trademark and unfair competition claims do not arise out of a

26   manufacturing agreement where resolution of patent claims did not require

27   interpretation of, or otherwise relate to, the agreement); *see also Ingenieria*

28

Mitchell
Silberberg &
Knupp LLP

4767828.1

13

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1  *Alimentaria del Matatipac, S.A. de C.V v. Ocean Garden Products Inc.*, 320 Fed.

2  Appx. 548, 549-50 (9th Cir. 2009) (claims for interference with contract and

3  prospective advantage "do not relate to interpretation of the contracts" containing

4  forum selection clauses); *Sims v. Paramount Gold & Silver Corp.*, No. CV 10-356-

5  PHX-MHM, 2010 U.S. Dist LEXIS 135661, *16-20 (D. Az. Dec. 21, 2010) (court

6  declined to apply forum selection clause to tort claims that did not require

7  interpretation of agreement containing clause, while dismissing claims that did);

8  *Androutsakos v. M/V Psara*, No. 02-1173-KI, 2004 U.S. Dist. LEXIS 12612, *17-

9  18 (D. Or. Jan. 22, 2004) ("Because the resolution of plaintiff's [personal injury]

10  claims against the Psara defendants does not involve analyzing in any way whether

11  the parties were in compliance with the contract, the forum selection clause does

12  not apply."). Here, Plaintiffs' copyright claims neither relate to nor require

13  interpretation of the Retransmission Agreement.

### A.  The Retransmission Agreement Does Not Implicate The Exclusive Rights Under Copyright At Issue Here

16  ██████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████[7]  In

19  contrast, the Plaintiffs here – producers and/or distributors of the copyrighted

20  works that DISH has infringed – are not parties to the Retransmission Agreement.[8]

21  ─────────────────────────────────
[7] ████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████

[8] The authorities that DISH cites for the proposition that a forum selection clause
24  can bind non-signatories are inapposite. In those cases, either at least one of the
plaintiffs was a signatory and the claims were "closely-related" to the contracts, or
25  plaintiffs were not signatories, but were asserting claims directly under the
contract. *See* Motion at 17-18. Here, none of the Plaintiffs signed the
26  Retransmission Agreement, and, as discussed below, there is no meaningful
relationship between this case and the Retransmission Agreement, because the
27  copyright claims are wholly independent of the Agreement. *See, e.g., Accentra*,
2008 U.S. Dist LEXIS 112183 at *10 n.2 ("The Court also notes that Plaintiff
28  WorkTools was not a party to the MA, and therefore is not bound by the forum

14



1 ████████████████████████████████████████████████

2 ████████████████ – or for that matter the public performance right under

3 Section 106 (4) of the Copyright Act (which is made available to DISH pursuant to

4 compulsory license). Rather, Plaintiffs have sued because, through PTAT and

5 AutoHop, massive amounts of copyrighted primetime television programming are

6 being copied to the Hopper hard drives and made available for viewing without

7 commercials, █████████████████████████████████████

8 ██████████████████. This is a violation, █████████████████████

9 █████████████████████████████ of Plaintiffs' discrete **_copyright_**

10 **_law_** rights of distribution and reproduction under 17 U.S.C. § 106(1) and (3),

11 respectively.[9] Resolution of these claims simply does not require interpretation of,

12 or otherwise relate to, the Retransmission Agreement. It follows that this lawsuit

13 does not arise out of the Retransmission Agreement, and the forum selection clause

14 does not apply.

     **B.**    **_The Provisions Of The Retransmission Agreement That DISH Cites_**
        **_Do Not Support Its Argument That Plaintiffs' Claims Arise Under_**
        **_Or Out Of That Agreement_**

24 selection clause. Defendant's argument that WorkTools should be bound by the
forum selection clause by privity or by some other characteristic of WorkTools's

25 relationship with Accentra is not persuasive. However, because the Court finds
that the forum selection clause does not govern any claims in this case, the Court

26 need not address what impact the forum selection clause would have had on claims
brought in part by a non-party to the clause.").

27 [9] *See Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.3d 154, 156-7 (3rd
Cir. 1984) ("the rights granted by section 106 are separate and distinct, and are

28 severable from one another").

15

Mitchell
Silberberg &
Knupp LLP

4767828.1

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

10

10

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Mitchell
Silberberg &
Knupp LLP

4767828.1



**C.    *DISH's Contracts With Other Parties Are Irrelevant To Plaintiffs' Claims***

DISH's next makes the bizarre argument that because ABC and Fox in their separate lawsuits have brought contract claims that allegedly arise out of the same conduct as their copyright infringement claims, CBS' copyright claims must arise under or out of the Retransmission Agreement.  Motion at 15.  For example, DISH points to Fox's allegation that PTAT is a "*de facto* VOD [*i.e.*, video-on-demand] service."  *Id.*  According to DISH, an allegation in a separate lawsuit made by a separate party about a separate and distinct contract somehow informs the resolution of this case.  The argument is spurious on its face.

Whatever the provisions in the Fox and ABC contracts – and Plaintiffs are not privy to those agreements – they are irrelevant here.  Unlike Fox and ABC, Plaintiffs here have not asserted that DISH's conduct at issue in this case is in any way governed by or related to the Retransmission Agreement.  Indeed, CBS intends to move to dismiss the declaratory judgment contract claims that DISH has asserted against it in New York on the ground that there is no case or controversy regarding DISH's compliance with the Retransmission Agreement for the very

---

[11] DISH has repeatedly characterized its Hopper as time-shifting technology.  *See, e.g.,* Rotstein Decl., Ex. F, at 8-9 (repeatedly stating that Hopper is "time-shifting" technology); First Amended Complaint in NY Action (Phillips Decl, Ex B), ¶¶ 4, 6, 29 and 32 (asserting that the Hopper is a DVR and is time-shifting technology).

17

Mitchell
Silberberg &
Knupp LLP

4767828.1

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1  reasons discussed herein.  In short, other parties' contracts and legal positions

2  cannot salvage DISH's motion.



9  [12]

### D.   17 U.S.C. § 122 Does Not Bring Plaintiffs' Claim "Under" The Retransmission Agreement

13  DISH argues that 17 U.S.C. § 122 somehow brings the conduct alleged in

14  the complaint within the purview of the Retransmission Agreement.  Motion at 14.

15  But DISH's motion is silent on how Section 122 supposedly does this.  In any

16  event, the argument is without merit.  Section 122 provides in pertinent part:  "A

17  secondary transmission of a *performance or display* of a work embodied in a

18  primary transmission of a television broadcast station into the station's local

19  market shall be subject to statutory licensing under this section . . ." (emphasis

20  added).  According to Professor Nimmer, "Section 122 subjects to statutory

21  licensing throughout the United States any eligible 'secondary transmission' of a

22  *performance or display* of a work embodied in a primary transmission of a

23  television broadcast station's local market."  2 *Nimmer On Copyright* §8.18[G][2]



26  [12]

1   (emphasis added).[13]  What is significant for the purposes of the instant case is that

2   Section 122 addresses ***public performance and display*** rights under the Copyright

3   Act, but has no bearing on the exclusive copyright rights at issue in the instant case

4   – the ***reproduction and distribution*** rights.  It follows that Section 122 could not

5   conceivably transform this case into one that arises under or out of the

6   Retransmission Agreement.

7         ***E.***    ***The Cases Upon Which DISH Relies Do Not Support Its Position***
   ***That This Case Arises Out Of Or Under The Retransmission***
8             ***Agreement***

9         Even if Ninth Circuit law were relevant (and for the reasons discussed in

10   Section V, *supra*, it is not), the judicial opinions on which DISH relies (Motion

11   at 12-14) do not avail it.  In each of those cases, unlike here, the tort claims at issue

12   could not be adjudicated without interpreting the contract.  *See, e.g., Manetti-*

13   *Farrow, Inc., v. Gucci America, Inc.*, 858 F.2d 509, 513-14 (9th Cir. 1988) (claims

14   for price squeezing, theft of trade secrets, wrongful neglect of delivery orders, and

15   wrongful "abrogation" of contract claims cannot be adjudicated without analyzing

16   whether the parties were in compliance with the contract.);  *Multimin USA Inc. v.*

17   *Walco Intern'l, Inc.*, No. CV F 06-0226 AWI SMS, 2006 WL 1046964, **6-7

18   (E.D. Cal. Apr. 11, 2006) (because the agreement contained the circumstances

19   under which the defendants could use the plaintiffs' marks and the existence of a

20   secrecy clause, Lanham Act, unfair competition, and trade secret causes of action

21   were all predicated on Plaintiffs' contention that defendants violated the

22   agreement).[14]  In contrast, for the reasons discussed above, there is no need to

---

23   [13] The purpose of the statutory license is to allow a satellite-service provider like

24   DISH to obtain an automatic license to publicly perform works (such as musical
   compositions) contained in broadcast programming, without negotiation, once

25   DISH obtains the consent of a broadcast station to retransmit the station's signal.
   *See* 47 U.S.C. § 325 (requiring satellite services to obtain retransmission consent).

26   [14] *See also Graham Tech Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp.
   1427, 1433 (N.D. Cal. 1997) (whether or not copyright violations occurred

27   dependent on resolution of "central issue" of whether the employment agreement
   between plaintiff and defendant covered creation of the works in question);

28   *Questrel Inc. v. Merriam-Webster, Inc.*, No. SACV 10-1907 AG (MLGx), 2011

Mitchell
Silberberg &
Knupp LLP

4767828.1

19

1  interpret, apply or consider the Retransmission Agreement to resolve the pending

2  claims, which relate, not to the public performance right through satellite

3  retransmission, but to DISH's brazen violation of the reproduction and distribution

4  rights by virtue of PTAT and Auto Hop.

5  **VII.   CONCLUSION**

6      For the reasons discussed above, Plaintiffs respectfully ask the Court to deny

7  DISH's motion.

8

9  DATED: August 3, 2012          MITCHELL SILBERBERG & KNUPP LLP

10                    By: _____

11                      Robert H. Rotstein
                    Attorneys for Plaintiffs

12

13

14  U.S. Dist. LEXIS 154753, **9-10 (C.D. Cal. Mar. 23. 2011) (where plaintiff

15  alleged that Merriam had infringed Questrel's copyrights and misappropriated its
trade secrets by using software outside the scope of the licensing agreement,
thereby raising issues of scope of the agreement, forum clause in agreement

16  applied); *Big Sandy Rancheria of W. Mono Indians v. Brownstone, LLC*, No. 1:11-
cv-00198-OWW-GSA, 2011 U.S. Dist. LEXIS 43823, *12 (E.D. Cal. Apr. 22,

17  2011) (plaintiff alleged that there was "an actual and justiciable controversy . . .
under the agreements" containing the forum clauses in connection with each cause

18  of action); *Manila Indus., Inc. v. Ondova Ltd.*, 334 Fed. Appx. 821, 823 (9th Cir.
2009) (each of plaintiff's claims "relates in some way" to contract containing

19  forum clause, and "cannot be adjudicated without analyzing whether the parties
were in compliance with the contract."); *Loukianoff v. Galitsky*, No. C 12-00296

20  CRB, 2012 U.S. Dist. LEXIS 47974, **14-16 (N.D. Cal. Apr. 4, 2012) (plaintiff
claimed there were two partnerships, and that dispute arose from partnership as to

21  which there was no forum clause; court found that there was only one agreement
which contained a forum clause, and that the claims regarding ownership and use

22  of intellectual property were dependent on interpretation and application of that
agreement); *Lumascape USA, Inc. v. Vertex Lighting, Inc.*, No. C 05-04809 WHA,

23  2006 WL 825411, **9-10 (N.D. Cal. Mar. 29, 2006) (where all claims turned on
whether defendant was authorized to use trademarks in a particular manner under

24  its agreement with plaintiff, forum clause of agreement applied to all claims);
*Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825 JW, 2005 U.S. Dist. LEXIS

25  8450, **15-16 (N.D. Cal. Apr. 1, 2005) (copyright and trademark claims
dependent on whether agreement's terms were binding on defendant; accordingly,

26  forum clause in agreement applied); *Bagdasarian Productions, LLC v. Twentieth
Century Fox Film Corp.*, No. 2:10-cv-02991-JHN-JCGx, 2010 WL 5154136, *3

27  (C.D. Cal. Aug. 12, 2010) (where plaintiff's copyright claims turned on whether it
transferred those rights to defendant under contract, copyright and unjust

28  enrichment claims were subject to forum clause in contact).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**